Whyte, J.
dissenting. The defendants, Smith and Locke, had an execution against Francis M’Connell for about the sum of $2400, which came to the defendant Holland’s hands, sheriff of Henry county, who levied it on three negroes, the property of Francis M’Connell.— *132 M’Connell gave a delivery bond, with the complainant, Love, his security for the redelivering of the property levied on. After this bond was executed, other property, to ■wit, cattle, hogs, sheep, household furniture, &c. were inserted in the bond by the consent of the parties thereto, and acknowledged by them to be their act and deed.— But as to the consent and subsequent acknowledgement, thére being evidence on both sides, renders these facts doubtful. At the day, the negroes were'produced by the obligors in the delivery .bond, and tendered to the sheriff upon his giving up to them the bond, Which he refused, because the rest of the property mentioned in the bond Was not produced; but offered to take the negroes and credit the bond with a receipt of them; this offer notbe-.ing accepted by the obligors they retained the possession of the negroes, and the sheriff returned the bond forfeited to the office of the circuit court of Jackson county; took out a second execution from the clerk, levied anew on two of the negroes before levied on, and sold them. — ■ The complainant’s bill is brought to be relieved from paying beyond the value of the property levied on, and inserted inthebond, alleging that the plaintiff and the other obligors had no notice of the issuance of the second execution, to show cause against its issuance. The third negro mentioned in the delivery bond, was worth about $200, and the other property above mentioned, to wit, cattle, hogs, sheep, &c. is not worth more than $200. Pinal decree in the court of chancery, that the defendants Smith- and Locke, be perpetually enjoined from proceeding on said delivery bond, in any execution, judgment or decree founded thereon against the complainant, except the sum of $400 with interest from 24th September, 1S29, until paid; that being the amount of the property specified in the condition of the said delivery bond, after deducting therefrom the amount of moneys raised by sale of part of said property for the satisfaction of the execution found *133 ed on said delivery bond, and each party to pay his own J 3 r J f J costs.
The decision of this cause rests on the act of assembly of 1801, ch. 13. The said statute says, that u when any execution may he levied on real or personal property, if the debtor shall give sufficient security to the officer to have the goods and chattels forthcoming at the day and place of sale.” Although in this clause, the act in stating the levy is not particular, hut general, it evidently contemplates, from its subsequent provisions, two classes of cases. The one, where the levy on personal property is to the amount of what is due upon the execution.— The other is, where the levy on property falls short of that amount. This clause, embracing all cases of executions, comprehends both, classes of levy, as justice requires, to meet the experience of the country, which furnishes us with numerous and regretted, though necessary, instances of both. In the first class, the undertaking and liability of the security is"for the whole of the money due on the execution; in the second class not for the whole of the sum due by the execution, but proportioned to the actual amount and value of the levy. The construction claimed on argument for the defendants, assumes for them the liability incurred by the security upon the first class; and were the present case in that class it would operate justly; but in the second class, which is the present case, it would operate most unjustly, contrary to reason and the very nature of the character and duty of the security. To prevent this injustice was made the following provision: “it shall be the duty of the officer to take a bond payable to the creditor, in double the amount of the sum in the execution, reciting the service of the execution, and the amount of the money due thereon, conditioned for the true performance of the same.” Now, why should the recital of the service of the execution, that is, a specification of the particular items of property levied on, be required to be inserted in the bond, un *134 less it were to show the precise amount of the liability r . . ... A n . .. , ot the security, m the event ot a non-delivery at the day and place of sale. It could only be for this purpose consistently with the aim-and -scope of the act. — ■ What is the moral extent of the liability of the security in’this knd similar cases? It is, that the property of the principal legally subjected by execution, should be forthcoming and appropriated to its discharge as far as it will be available; that is, that the value of the goods and chattels attached-and fastened on by the levy, be so applied: if this application is not made, the .value becomes the measure of the damages sustained, which the security is liable to pay.
This act construed according to its letter in some parts, as understood by the defendants’ counsel, presents a law of almost inconceivable hardship, such as the mind cannot assent to, as the intention of an enlightened legislature. To give such a construction would be to strain from the security near $2000 instead of $400, the utmost limit of the extent of tire principal’s property not previously sold on the original execution.
The law, previous to these acts of assembly, operated upon the debtor defendant’s property alone, by the execution of fieri facias; and this, in the nature of things, was all the creditor plaintiffs could have, -for it reached the defendant’s all. Now, what is the objefct of these acts? Certainly not palpable injustice. Such is not to be imputed to the legislature: they were dictated in a better spirit; to alleviate the immediate- pressure of an execution by allowing a short time to the party to obviate and lessen the inconvenience and peculiar hardship, that under his immediate circumstances at the time would be consequent upon a present deprivation of the possession of the property by its removal upon sale. But this indulgence in behalf of the unfortunate debtor, was guarded by a condition annexed, so as not to injure the creditor,- or place him in a worse situation: for his former situation was to be *135 restored to him precisely, by replacing the property levied on by the execution in the sheriff’s hands, where it was before the delivery under the bond; if not so placed, then the surety became liable for its value.
The recent act of assembly, of 1S31, ch. 25, accords with the view taken of this opinion; and although it cannot be held as a legislative construction of the previous acts binding on this court, yet it ‘furnishes evidence- that these acts, from the structure of their penning, were liable to be misconstrued; and from the frequency of acting under them, it became necessary to have the will and intention of the legislature clearly and distinctly stated upon their subject matter. The expression of that view in the first section of this act, is in these words: “that hereafter the security or securities on any forfeited bond for the delivery of property levied on by execution, shall not be held responsible for more than the value of the property specified in such bond, that shall not have been delivered on the day of sale.” It is a declaration and enactment pursuant to tfee principles of equity, and in strict accordance with the suggestions of natural justice and the dictates of right reason, clearly and plainly expressed, disengaged from all equivocal clauses involving doubts productive of vexation, trouble and loss.
The case before the court is an illustration of the effects of the former acts on society arising in mistaken construction, induced by doubtful language. The complainant Love has an execution levied on his property, founded on a forfeited bond for $4,954 56, entered into on the 8th September, 1829, for the delivery of the property on the 24th of the same month: the sum due on this bond by the complainant Love, at the most is $400, the value of the whole of the principal’s property undelivered, for the non-delivery of which, and its application to the satisfaction of the first execution to that amount, is the levy of this execution on the forfeited bond made on the plaintiff Love, the security: and perhaps only $200 *136 is due, a difference proceeding from a controverted point of law and fact, whether the delivery bond legally covered the one or the other of these two amounts; a question I shall not examine, as both the chancellors who have passed upon the question concur in adopting the larger amount. Taking it, then, the most unfavorably for the security, that he is liable for $400, what a case of hardship, oppression and injustice does it present to the face of a court of equity. The argument for the defendants, Smith and Locke, the plaintiffs in the execution, attempted to palliate' this course oí proceeding against the surety, Love; resting themselves on the execution, they say they have got a legal right against which a court of equity will not give relief. But independent of the innate injustice of the defendants’ case, a court of equity is compelled to notice the manner as well as the means by which this execution was obtained. It was. obtained from the clerk, in his office, without sanction of a judgment upon the bond, without notice given to the security, the complainant, and without his knowledge; depriving him of the opportunity of appearing, and showing cause against its is-issuance; an act of injustice almost without a parallel, operating' a fraud upon the plaintiff’s undertaking as surety. Such a legal right of the defendant, if it can be called one, procured under these circumstances, cannot be retained. My opinion, therefore, is, that the decree of the court of chancery he affirmed.
Decree reversed and bill dismissed. ’